1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
    NORMA V. GARCIA, Cal. Bar No. 223512
3      ngarciaguillen@sheppardmullin.com
    SHANNON Z. PETERSEN, Cal. Bar No. 211426
4      spetersen@sheppardmullin.com
    650 Town Center Drive, 4th Floor
5   Costa Mesa, California  92626-1993
    Telephone:  714-513-5100
6   Facsimile:   714-513-5130

7   BURKE, WARREN, MACKAY & SERRITELLA, P.C.
    SUSAN OVERBEY (*pro hac vice* to be filed)
8      soverbey@burkelaw.com
    330 North Wabash, 22nd Floor
9   Chicago, Illinois  60611
    Telephone:  312-840-7000
10  Facsimile:   312-840-7047

11  Attorneys for Defendants
    JPMORGAN CHASE BANK, N.A., for
12  itself and as successor by merger to CHASE
    HOME FINANCE LLC, EMC MORTGAGE
13  LLC, formerly known as EMC
    MORTGAGE CORPORATION, THE
14  BEAR STEARNS COMPANIES, LLC and
    CALIFORNIA RECONVEYANCE
15  COMPANY

16              UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18

19
    ROBERT POTTER, et al.,
20                                          Case No. **CV11 - 10255 CAS (AGRx)**
    Plaintiffs,
21
    v.                                      **JPMORGAN CHASE BANK, N.A.,**
22                                          **EMC MORTGAGE LLC, AND**
    JPMORGAN CHASE BANK, N.A., et           **THE BEAR STEARNS**
23  al.,                                    **COMPANIES, LLC'S NOTICE OF**
                                            **REMOVAL**
24  Defendants.
                                            (Superior Court of California, County
25                                          of Los Angeles, Case No. BC 459627)

26

27

28

1064543.1

Pursuant to 28 U.S.C. §§ 1331, 1332[1] and 1441, Defendants JPMorgan Chase Bank, N.A. ("Chase"), for itself and as successor by merger to Chase Home Finance LLC, EMC Mortgage LLC, formerly known as EMC Mortgage Corporation ("EMC"), and The Bear Stearns Companies, LLC ("Bear Stearns") hereby give notice of removal of the above-captioned case, currently pending in the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California.

As described below, removal is proper because the case meets the requirements of a mass action under CAFA. 28 U.S.C. § 1332(d)(2). Separately, the Court has federal questions jurisdiction because the Federal Deposit Insurance Corporation is a party, and because there is a complete preemption defense to Plaintiffs' unfair competition claim premised on Cal. Civ. Code § 2923.5.

In support of their notice of removal, Chase, EMC, and Bear Stearns state as follows:

## **BACKGROUND**

1.      On or around April 15, 2011, plaintiff Robert Potter filed his original complaint along with over 60 individual Plaintiffs against "JP Morgan Chase Bank, N.A., a New York corporation, in its own capacity and as an acquirer of certain assets and liabilities of Washington Mutual Bank [("WaMu")]," "Chase Home

---

[1]   The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, is codified in relevant part at 28 U.S.C. § 1332(d)(2).

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

Finance, LLC," "Long Beach Mortgage Company, a California corporation [("Long Beach Mortgage")]," "EMC Mortgage Corporation," "The Bear Stearns Companies, LLC," "California Reconveyance Company," "Priority Posting & Publication" and "LPS Default Title & Closing," and "Does 1 through 1000, inclusive," (the "Original Complaint," attached hereto as Exhibit 1).

2.     Plaintiffs filed an amended complaint on November 10, 2011, adding over 90 additional Plaintiffs (the "Amended Complaint," attached hereto as Exhibit 2).  There are 149 individual Plaintiffs identified in the Amended Complaint.

3.     The allegations in the Amended Complaint, like the Original Complaint, raise issues regarding WaMu's origination of loans, and Long Beach Mortgage is named as a defendant.   WaMu was the successor to Long Beach Mortgage.  (*See* Exhibit 3, Notice of FDIC Receivership.)

4.     On September 25, 2008, the Office of Thrift Supervision closed WaMu, and the Federal Deposit Insurance Corporation (the "FDIC") was named receiver.  (*Id.*)  As a result of the FDIC's appointment, WaMu ceased operations. (*Id.*)

5.     On May 31, 2011, Chase, EMC, and Bear Stearns filed a notice with the state court informing it that the FDIC has been appointed receiver of WaMu and requesting that the state court substitute the FDIC as a party for WaMu and Long Beach Mortgage (the "Notice"), a copy of which is attached as Exhibit 3.

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

6.     In the Amended Complaint, Plaintiffs allege a confusing array of theories, all based on conclusions and almost entirely devoid of facts.  Plaintiffs' purported claims are predicated on "Defendants" alleged: (1) fraudulent origination of loans based on inflated appraisals and lax underwriting standards without regard to Plaintiffs' abilities to repay their loans, so that defendants could maximize their profits from the sale of the loans on the secondary market (*see* Am. Compl. ¶¶282-304, 324-327); (2) improper foreclosure activities in connection with Plaintiffs' mortgage loans, including the alleged failure to have standing to foreclose and failing to file proper statutory notices (*Id.,* ¶¶349-367, 483-495); and (3) engagement in a widespread scheme to defraud homeowners.  (*Seen generally, id.*) Plaintiffs simply conclude these alleged improprieties occurred, but allege little or no facts related to any Plaintiff or specific property.  In fact, Plaintiffs do not even allege the addresses for the properties at issue, let alone any facts related to the origination, servicing and/or alleged foreclosures on the properties.[2]

7.     Plaintiffs allege the following claims against all defendants: (1) fraudulent concealment (violation of California Civil Code §§ 1572, 1709 and 1710); (2) intentional misrepresentation (violation of California Civil Code §§ 1572, 1709 and 1710); (3) negligent misrepresentation (violation of California Civil Code §§ 1572, 1709 and 1710); (4) Unfair Competition (violation of California

---

[2] Upon request, Plaintiffs' counsel provided each of the Plaintiffs' addresses and many of their loan numbers to counsel for Chase, EMC, and Bear Stearns.

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

1  Business and Professions Code § 17200, *et seq.*), based, in part, on violation of Cal.

2  Civ. Code § 2923.5; (5) wrongful foreclosure; and (6) breach of contract.

3

4      8.    Plaintiffs seek the following relief: (1) "[g]eneral, special and

5  exemplary damages" for claims one, two, three, five and six as listed above; (2)

6  statutory damages for claims four and five listed above; (3) restitution for claim

7  four; (4) "temporary, preliminary, and permanent injunctive relief" pursuant to

8  claims four and five listed above; (5) attorneys' fees; and (6) "such other and further

9  relie[f] as this Court may deem just and proper." (*See* Am. Compl., Prayer for

10  Relief, p. 110-111.)

11

12      9.    Plaintiffs do not limit the amount of damages sought anywhere in the

13  Amended Complaint.  (*See generally*, *id.*)  Further, Plaintiffs repeatedly allege

14  "Defendants" "may not enforce [Plaintiffs'] notes or deeds of trust." (*See e.g.*, *id.*,

15  ¶¶352.)

16

17                         **TIMELINESS OF REMOVAL**

18

19      10.   On May 3, 2011, Chase, EMC, and Bear Stearns were served with

20  copies of the Summons and Original Complaint through their registered agent.  On

21  November 11, 2011, Chase, EMC, and Bear Stearns received a copy of the

22  Amended Complaint, which added over 90 Plaintiffs, thus bringing the total

23  number of Plaintiffs to over 100, making CAFA mass action removal available.

24  CAFA removal is not bound by the traditional 30-days from service of the

25  complaint limitation.  Instead, "[u]nder CAFA, class actions and mass actions may

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

1   be removed at any point during the pendency of litigation in state court, so long as

2   removal is initiated within thirty days after the defendant is put on notice that a case

3

4   which was not removable based on the face of the complaint has become

5   removable." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 691 (9th Cir.

6   2006).  Therefore, because the instant motion was filed within 30 days of Plaintiffs

7

8   filing the Amended Complaint (which brought the number of Plaintiffs to over

9   100), it is timely.

10

### DIVERSITY JURISDICTION EXISTS UNDER CAFA

11

12        11.    The Amended Complaint meets the definition of a "mass action" under

13   CAFA for purposes of removal.  Under 28 U.S.C. § 1332(d)(11), the district courts

14   have original jurisdiction over any civil action in which: (a) any member of the

15

16   class of plaintiffs is a citizen of a State different from any defendant,  (b) the matter

17   in controversy exceeds the sum or value of $5,000,000, exclusive of interest and

18   costs, (c) there are over one hundred named plaintiffs,  and (d) the matter in

19

20   controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

21   for each named plaintiff.  *See also, Tanoh v. Dow Chemical Co.*, 561 F.3d 945,

22   952-953 (9th Cir. 2009).

23

24        12.    CAFA applies to any civil action commenced on or after the February

25   18, 2005.  Each of the requirements for diversity jurisdiction under CAFA mass

26   action is met in this case.

27

28

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

**There Is Minimal Diversity of Citizenship as Required By CAFA.**

13.     Minimal diversity is required for CAFA mass-action removal, meaning "any member of the class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(11)(a)

14.     The Court does not consider and must disregard parties sued under "fictitious names," such as Plaintiffs' allegations related to unnamed defendants "Does 1 through 1,000, inclusive." (Am. Compl. ¶274.)  *See* 28 U.S.C. §1441(a); *see also Cripps v. Life Ins. Co. of Am.,* 980 F.2d 1261, 1266 (9th Cir. 1992); *Florio v. Sierra Pacific Mortgage Co., Inc.,* No. 3:10-cv-00524-RCJ-RAM, 2011 WL 221726, at *3 (D. Nev. Jan. 20, 2011).

15.     Plaintiffs are alleged to be residents of California.  (Am. Complaint, ¶¶53-251.)

16.     Defendant Chase is a citizen of Ohio because it is a national bank and its articles of association designate that its main office is located in Ohio.  *See Wachovia Bank v. Schmidt,* 546 U.S. 303, 304 (2006) (a national bank's citizenship is the state designated in its articles of incorporation as the locus of its main office). (Exhibit 4, N. Shaw Decl., ¶2.)

17.     Therefore, because at least one Plaintiff is a citizen of a different state than any Defendant, minimal diversity is met.

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

**Numerosity and Consent Requirements Are Met.**

18.   The CAFA numerosity requirement is met in this case because there are 149 Plaintiffs named in the Amended Complaint.

19.   California Reconveyance Company[3] joins in and consent to removal. (Exhibit 5, Joinder and Consent.)[4]

**The Amount In Controversy Meets The Jurisdictional Minimum**

20.   The amount in controversy for each plaintiff exceeds the jurisdictional minimum of $75,000 required for CAFA mass-action removal pursuant to 28 U.S.C. § 1332(d)(11)(d).[5]

---

[3] California Reconveyance Company filed a notice of non-monetary status in the Superior Court of California, County of Los Angeles, on May 9, 2011.  A copy of the notice is attached hereto as Exhibit 6.

[4] A request for dismissal of Priority Posting & Publication was filed in state court on December 9, 2011.  LPS Default Title & Closing was dismissed from this matter prior to the filing of the Amended Complaint.  Plaintiffs inadvertently left LPS Default Title & Closing on the caption of the Amended Complaint, but filed a request for dismissal in state court on December 9, 2011.  Therefore, Priority Posting & Publication and LPS Default Title & Closing's consent is not required. *Hafiz v. Greenpoint Mortg. Funding*, 409 Fed.Appx. 70, 72, No. 09-16746, 2010 WL 4146538, at *1 (9th Cir. Oct. 22, 2010) (remand to state court unnecessary where defendant which did not give consent to removal was dismissed before judgment on the merits was entered.)

[5] Chase, EMC, and Bear Stearns deny that they are subject to any liability and deny that Plaintiffs will ultimately be entitled to recovery in any amount. Chase, EMC, and Bear Stearns do not admit that, if liability is found, it will exceed $75,000 per Plaintiff.  Instead, the figures set forth herein are solely for purposes of establishing that the amount in controversy requirement is satisfied, when taking the facts alleged in the Complaint and the Amended Complaint as true solely for purposes of this Notice.

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

21.    Plaintiffs do not limit or cap the damages sought to an amount less than $75,000 per Plaintiff or $5 million total.   In fact, Plaintiffs do not allege any specific amount of damages.   Accordingly, Chase, EMC, and Bear Stearns are only required to prove the amount in controversy requirement by a preponderance of the evidence.   *Abrego, Abrego,* 443 F.3d at 683.   Under the preponderance of the evidence standard, "[t]he moving party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Behrazfar v. Unisys Corp.,* 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (citing *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008)). Rather, the standard simply requires the removing party to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." *Korn,* 536 F. Supp. 2d at 1204.

22.    Plaintiffs seek declaratory and injunctive relief, and allege "Defendants" cannot enforce their notes and deeds of trust.  (Am. Compl. ¶352.)  It is well-established that where a plaintiff seeks declaratory or injunctive relief, the amount in controversy for jurisdiction purposes can be measured by the value of the benefit to Plaintiffs in obtaining injunctive or declaratory relief – here, being relieved of having to make payments on Plaintiffs' respective loans.  *See Hunt v. Wash. St. Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977); *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 841 (9th Cir. 2002); *Kehoe v. Aurora Loan Servs. LLC,* No. 3:10-cv-00256-RCJ-RAM, 2010 WL 4286331, at *3 (D. Nev. Oct 20, 2010).

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

23.   Where a plaintiff effectively seeks rescission and/or invalidation of a note and mortgage (or deed of trust), the value of the injunctive or declaratory relief of rescission and/or invalidation may be measured by the principal amount of the loan, excluding interest.  *See Olander v.  Recontrust Corp.,* No. C11-177 MJP, 2011 WL 841313, at *2-3 (W.D. Wash. Mar. 7, 2011); *Ngoc Nguyen v. Wells Fargo Bank, N.A., et al.,* --- F.Supp.2d ----, No. C-10-4081-EDL, 2010 WL 4348127, at *5-6 (N.D. Cal. Oct. 27, 2010).

24.   Plaintiffs' counsel confirmed addresses and loan numbers for the Plaintiffs.  Thus, Chase, EMC, and Bear Stearns were able confirm that the unpaid principal balances exceeded $75,000 for at least 110 Plaintiffs.  (Exhibit 4, N. Shaw Decl., ¶¶8-118.)

25.   Finally, in addition to the "restitutionary or compensatory damage" and voiding of their loans, Plaintiffs seek attorneys' fees under California Business and Professions Code § 17200, which are indeed recoverable under that statute.  (Am. Compl., p. 111); *Davis v. Ford Motor Credit Co.,* 179 Cal. App. 4th 581, 600 (2nd Dist. 2009) ("If a plaintiff prevails in an unfair competition law claim [under §17200], it may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 1021.5.")  Where an underlying statute authorizes an award of attorney's fees and costs, either with mandatory or discretionary language, they may be included in the calculation of the jurisdictional amount for purposes of

1064543.1

removal.   *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).

26.   Plaintiffs also seek punitive damages, prejudgment interest and attorneys' fees and costs.   Punitive and exemplary damages may be considered in calculating the amount in controversy for purposes of determining federal jurisdiction. *See Davenport v. Mutual Benefit Health & Accident Assoc.*, 325 F.2d 785, 787, 789 (9th Cir. 1963); *Alexander v. FedEx Ground Package System, Inc.*, No. C050038 MHP, 2005 WL 701601, *4-5 (N.D. Cal. Mar. 25, 2005) (holding amount in controversy is well over jurisdictional minimum due to attorneys' fees and punitive damages).

27.   Furthermore, the total amount in controversy for the case exceeds the sum or value of $5,000,000, exclusive of interest and costs (149 Plaintiffs x $75,000 = $11,175,000).[6]  28 U.S.C. § 1332(d)(2).

---

[6]  Chase, EMC, and Bear Stearns deny that they are subject to any liability and deny that Plaintiffs will ultimately be entitled to recovery in any amount. Chase, EMC, and Bear Stearns do not admit that, if liability is found, it will exceed $5,000,000.   Instead, the figures set forth herein are solely for purposes of establishing that the CAFA amount in controversy requirement is satisfied, when taking the facts alleged in the Original and Amended Complaints as true solely for purposes of this Notice.

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

## REMOVAL IS APPROPRIATE FOR ADDITIONAL REASONS

### Federal Question Jurisdiction Exists Because The FDIC Is A Party

28.    This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

29.    12 U.S.C. § 1819 (a)(2)(A) states that "[e]xcept as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation [the FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."

30.    The FDIC is deemed to become a party to an action for the purpose of 12 U.S.C. § 1819 no later than upon the service of a motion or any pleading which discloses that the FDIC has become the real party in interest for reasons including that it has taken over a failed institution that is a named party. *See, e.g., Buczkowski v. FDIC*, 415 F.3d 594, 596 (7th Cir. 2005) (rejecting remand where FDIC removed case after moving to intervene but before state court ruled on motion); *Gilmor v. Preferred Credit Corp.*, No. 10-0189-CV-W-ODS, 2010 WL 1693034, at *2 (W.D. Mo. Apr. 27, 2010) ("notice to the court that the FDIC has been appointed the receiver for a failed bank is sufficient to make the FDIC a party for purposes of seeking removal"); *Resolution Trust Corp. v. Fragetti*, 49 F.3d 715, 717 (11th Cir. 1995) (lawsuit removable on date state court notified that Resolution Trust Corp. had been appointed receiver of failed institution).

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

31.     The FDIC became a party to this action for the purpose of 12 U.S.C. § 1819 no later than upon the filing of the Notice in the state court, on May 31, 2011, which disclosed that the FDIC had been appointed the Receiver of WaMu.

32.     As a result of the FDIC's takeover of WaMu and the filing of the Notice disclosing that FDIC had been appointed the Receiver of WaMu, this suit arises under the laws of the United States.  12 U.S.C. § 1819(a)(2)(A); *see also Fed. Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466, 1471 (10th Cir. 1990) (noting the "very expansive" grant of jurisdiction, "indicating Congress' desire that cases involving FDIC should generally be heard and decided by the federal courts").

33.     Because this suit arises under the laws of the United States, this Court has original subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 (giving federal courts federal question jurisdiction over civil actions "arising under the Constitution, laws or treaties of the United States.").

34.     Chase, EMC, and Bear Stearns thus may remove this action under 28 U.S.C. §§ 1441 and 1446.

**Federal Question Jurisdiction Also Exists Because There Is A "Complete Preemption" Defense**

35.     The preemptive effect of the National Bank Act, 12 U.S.C. §21, *et seq.* (the "NBA") and the regulations promulgated thereunder by the Office of the

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

1064543.1

Comptroller of Currency (the "OCC") applies to national banks and their operating subsidiaries. *See Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1572 (2007).

36.   Chase is registered as a national bank with, and is supervised by, the OCC. (Exhibit 4, N. Shaw Decl., ¶2.)

37.   Where there is complete preemption of a claim under federal law, removal is proper. *Ngoc Nguyen v. Wells Fargo Bank, N.A., et al.,* --- F.Supp.2d ---, No. C-10-4081-EDL, 2010 WL 4348127, at *10 (N.D. Cal. Oct. 27, 2010).

38.   Here, Plaintiffs' unfair competition law claim predicated on violation of Ca. Civ. Code §2932.5 is completely preempted by federal law.   *Taguinod v. World Sav. Bank, FSB,* --- F.Supp.2d. ----, No. 10CV7864 SVW (RZx), 2010 WL 5185845, at *7 (C.D. Cal. Dec. 2, 2010) (complete preemption by federal law of § 2923.5 claim and citing *Pinales v. Quality Loan Serv. Corp.,* No. 09-1884, 2010 WL 3749427, at *3 (S.D. Cal. Sep. 22, 2010); *Gonzalez v. Alliance Bancorp,* No. 10-00805, 2010 WL 1575963, at *5-6, 2010 U.S. Dist. LEXIS 47943, at *15-16 (N.D. Cal. Apr. 19, 2010); *Parcray v. Shea Mortgage, Inc.,* No. 09-1942, 2010 WL 1659369, at *9 (E.D. Cal. Apr. 23, 2010); *Murillo v. Aurora Loan Servs., LLC,* No. 09-00503, 2009 WL 2160579, at *4 (N.D. Cal. Jul. 17, 2009) in support).[7]

---

[7]  Regulations and grounds for preemption of claims against a federal savings thrift are similar, if not identical, to those regulations and grounds for preemption of claims against a national bank and its operating subsidiaries. *See* 12 U.S.C. §21, *et seq.*; 12 C.F.R § 7.4009; 12 C.F.R. § 34.4.

JPMORGAN CHASE BANK, N.A., EMC MORTGAGE LLC,
AND THE BEAR STEARNS COMPANIES, LLC'S
NOTICE OF REMOVAL

Therefore, federal question jurisdiction exists here for additional reasons, and removal is proper.

39.    Chase, EMC, and Bear Stearns will give written notice of the filing of this Notice of Removal to counsel for Plaintiff, and will file a copy of this Notice of Removal with the Superior Court of the State of California for the County of Los Angeles, as required by 28 U.S.C. § 1446(d).

40.    Payment of the appropriate fees and costs for removal and docketing of this matter in federal court, if any, are tendered with this Notice.

WHEREFORE, Defendants JPMorgan Chase Bank, N.A., EMC Mortgage LLC, and The Bear Stearns Companies, LLC respectfully request that this action proceed in this Court as an action properly removed hereto.

Dated:  December 12, 2011          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____
                        Norma V. Garcia

Attorney for Defendants
JPMORGAN CHASE BANK, N.A., for itself
and as successor by merger to CHASE HOME
FINANCE LLC, EMC MORTGAGE LLC,
formerly known as EMC MORTGAGE
CORPORATION, CALIFORNIA
RECONVEYANCE COMPANY and THE
BEAR STEARNS COMPANIES, LLC

# EXHIBIT 1

# EXHIBIT 1

Exhibit 1
Page 16

 **CT Corporation**

**Service of Process Transmittal**
05/03/2011
CT Log Number 518459934

**TO:** Carl Del Vecchio
JPMorgan Chase Bank, N.A.
1 Chase Manhattan Plaza - 20th Floor, Legal Department
New York, NY 10005

**RE:** **Process Served in Delaware**

**FOR:** EMC Mortgage Corporation (Domestic State: DE)
*According to our records representation services for this entity have been discontinued in this jurisdiction.*

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robert Potter, etc., et al., Pltfs. vs. JP Morgan Chase Bank, N.A., etc., et al. including EMC Mortgage Corporation, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet(s), Instructions, Complaint, Notice, Attachment |
| **COURT/AGENCY:** | Los Angeles County Superior Court, CA<br>Case # BC459627 |
| **NATURE OF ACTION:** | Defendant wrongfully modify loans outstanding on plaintiff's property leading to wrongful foreclosure - Seeking injunctive relief |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/03/2011 at 14:45 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after the service of summons |
| **ATTORNEY(S) / SENDER(S):** | Vito Torchia Jr.<br>Brookstone Law. PC<br>4000 MacArthur Blvd.<br>Suite 1110<br>Newport Beach, CA 92660<br>800-946-8655 |
| **REMARKS:** | Please note that process server highlighted/underlined the entity being served in the documents prior to receipt by CT |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/03/2011, Expected Purge Date: 06/02/2011<br>Image SOP |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | The Corporation Trust Company<br>Scott LaScala<br>1209 Orange Street<br>Wilmington, DE 19801<br>302-658-7581 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit 1
Page 17

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

See Attachment

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

See Attachment

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 15 2011

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
RUGENA LOPEZ

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Los Angeles Superior Court

Central Civil West Courthouse
600 South Commonwealth Ave. Los Angeles, CA 90005

**CASE NUMBER:**
*(Número del Caso):*

BC450627

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Brookstone Law, PC; 4000 MacArthur Blvd., Suite 1110, Newport Beach, CA 92660; (800) 946-8655

DATE: _____  Clerk, by _____, Deputy
*(Fecha):*                *(Secretario)*            *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [XXX] on behalf of *(specify):*  EMC Mortgage Corporation, a Delaware corporation

under: [XXX] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
       [ ] other *(specify):*
4. [X] by personal delivery on *(date):* 5/3/11

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit 1
Page 18

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Potter v. JP Morgan Chase Bank, N.A. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

JP MORGAN CHASE BANK, N.A., a New York corporation, in its own capacity and as an acquirer of certain assets and liabilities of Washington Mutual Bank; CHASE HOME FINANCE, LLC, a limited liability company; LONG BEACH MORTGAGE COMPANY, a California corporation; EMC MORTGAGE CORPORATION, a Delaware corporation; THE BEAR STEARNS COMPANIES, LLC, a Delaware corporation; CALIFORNIA RECONVEYANCE COMPANY, a California corporation; PRIORITY POSTING & PUBLICATION, a California corporation; LPS DEFAULT TITLE & CLOSING, a Delaware corporation; and DOES 1 through 1000, inclusive.

Page 1 of 2

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Exhibit 1
Page 19

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Potter v. JP Morgan Chase Bank, N.A. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

ROBERT POTTER, an individual; JOAN POTTER, an individual; WILLIE COLLINS, an individual; ALICE COLLINS, an individual; TOM HARRY TAVOULARIS, an individual; JANINE TAVOULARIS, an individual; GERALD SZILLINSKY, an individual; TERI O'ROURKE, an individual; STIRLING HALE, an individual; MICHELLE HALE, an individual; CRISTINA MAGANA, an individual; KIM COLLIER, an individual; FAUSTO MANCILLA, an individual; ELSA BURGOS-MANCILLA, an individual; STEVEN SCOTT NEWTON, an individual; MARIA YOLANDA ALVARADO, an individual; VICTOR ALVARADO, an individual; GERARDO RIVERA, an individual; MAYBELLE RIVERA, an individual; MIGUEL VELAZQUEZ, an individual; LETICIA VELAZQUEZ, an individual; SANDRA VELAZQUEZ, an individual; TIMOTHY ANUSIEM, an individual; PERTCH TOUKHLADJIAN, an individual; MARLENE BACON, an individual; CRAIG WHITE, an individual; WALTER HARRIS, an individual; RANDELEIGH HARRIS, an individual; MARIA M. SEGURA, an individual; MARIA ZEPEDA, an individual; ROBERT HEROD, an individual; ANTHONY BLAND, an individual; MARIETTA BLAND, an individual; TERESITA BITANGA, an individual; FABIAN BITANGA, an individual; MADELINE BRIGANTE, an individual; JEANIE ZUO, an individual; NANCY VIZCARRA, an individual; CHARLES L. WEINER, an individual; PRESCILLA WEAVER, an individual; MADONNA GIONTA, an individual; DENNIS F. BEAME, an individual; SYDNEY C. BEAME, an individual; NOEL EZEKIEL, an individual; MARIA DE LA CRUZ, an individual; JEREMY FOTI, an individual; CHANTEL FOTI, an individual; DARLEEN REDDY, an individual; ANGELA MASTROMONICO, an individual; JOHNNY TUAN TRAN, an individual; DIANE THI TRUONG, an individual; TIFFANY TRUONG TRAN, an individual; QUAN TRAN, an individual; JUDITH MARTINO, an individual; MARTIN CHAVEZ, an individual; ANITA CHAVEZ, an individual; JOSEPH GORDON, an individual; KEVIN MURRAY, an individual; DAVID BENNETT, an individual; IRMA BENNETT, an individual; KRISTIE GREENLEAF, an individual; KRISTIN WITZENBURG, an individual; DYVAN SREY, an individual; and MICHAEL MAN, an individual,

Page 2 of 2

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Exhibit 1
Page 20

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Vito Torchia, Jr. (SBN 244687); Deron M. Colby (SBN 196686)<br>BROOKSTONE LAW, PC<br>4000 MacArthur Blvd., Suite 1110<br>Newport Beach, California 92660<br>  TELEPHONE NO.: (800) 946-8655   FAX NO.: (866) 257-6172<br>ATTORNEY FOR *(Name)*: Plaintiffs | CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles Superior Court<br><br>APR 15 2011<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>RUGENA LOPEZ |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS:  600 South Commonwealth Ave.
MAILING ADDRESS:
CITY AND ZIP CODE:  Los Angeles, CA 90005
BRANCH NAME:  Central Civil West Courthouse

| CASE NAME:<br>Potter v. JP Morgan Chase Bank, N.A. | |
|---|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited    [ ] Limited<br>(Amount        (Amount<br>demanded     demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [✓] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 459627 |
| | | JUDGE: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [✓] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [✓] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
         issues that will be time-consuming to resolve            in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence         f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive

4. Number of causes of action *(specify)*: 6: Fraudulent Concealment; Intentional Misrepresentation; etc.

5. This case [ ] is  [✓] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 15, 2011
Vito Torchia, Jr.
_____                          ▶ _____
(TYPE OR PRINT NAME)                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

Exhibit 1
Page 21

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

Exhibit 1
Page 22

| SHORT TITLE:<br>Potter v. JP Morgan Chase Bank, N.A. | CASE NUMBER<br>BC459637 |
|---|---|

### CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7-10   ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100   Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110   Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070   Asbestos Property Damage | 2. |
| | | ☐ A7221   Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260   Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210   Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240   Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250   Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g.,<br>assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270   Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220   Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Business Tort (07) | ☐ A6029   Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005   Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010   Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013   Fraud (no contract) | 1., 2., 3. |

### CIVIL CASE COVER SHEET ADDENDUM
### AND STATEMENT OF LOCATION

Exhibit 1<br>Page 23

| SHORT TITLE:<br>Potter v. JP Morgan Chase Bank, N.A. | | CASE NUMBER. |
|---|---|---|

| **A**<br>Civil Case Cover<br>Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|
| Professional<br>Negligence<br>(25) | ☐ A6017   Legal Malpractice | 1., 2., 3. |
| | ☐ A6050   Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025   Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination<br>(36) | ☐ A6037   Wrongful Termination | 1., 2., 3. |
| Other Employment<br>(15) | ☐ A6024   Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109   Labor Commissioner Appeals | 10. |
| Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004   Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008   Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019   Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028   Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections<br>(09) | ☐ A6002   Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012   Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage<br>(18) | ☐ A6015   Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract<br>(37) | ☐ A6009   Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031   Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027   Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300   Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| Wrongful Eviction<br>(33) | ☐ A6023   Wrongful Eviction Case | 2., 6. |
| Other Real Property<br>(26) | ☐ A6018   Mortgage Foreclosure | 2., 6. |
| | ☐ A6032   Quiet Title | 2., 6. |
| | ☐ A6060   Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer-<br>Commercial (31) | ☐ A6021   Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Residential (32) | ☐ A6020   Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Drugs (38) | ☐ A6022   Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration<br>(11) | ☐ A6115   Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

*Left margin vertical labels: Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) · Employment · Contract · Real Property · Unlawful Detainer · Judicial Review*

| LACIV 109 (Rev. 01/07) | **CIVIL CASE COVER SHEET ADDENDUM** | LASC, rule 2.0 |
|---|---|---|
| LASC Approved 03-04 | **AND STATEMENT OF LOCATION** | Page 2 of 4 |

Exhibit 1<br>Page 24

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Potter v. JP Morgan Chase Bank, N.A. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review.<br>(39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☑ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

Exhibit 1<br>Page 25

| SHORT TITLE:<br>Potter v. JP Morgan Chase Bank, N.A. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C<br>WHICH APPLIES IN THIS CASE<br><br>☐1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: |
|---|---|
| CITY:                STATE:      ZIP CODE: | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Central Civil Wes courthouse in the Central _____ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: April 15, 2011

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

Exhibit 1<br>Page 26

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 15 2011

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
RIGENA LOPEZ

1  Vito Torchia, Jr. (SBN 244687)
2  Deron M. Colby (SBN 196686)
   Aalok Sikand (SBN 248165)
3  **BROOKSTONE LAW, PC**
   4000 MacArthur Blvd., Suite 1110
4  Newport Beach, California 92660
   Tel: (800) 946-8655
5  Fax: (866) 257-6172
   E-mail: PottervJPMorgan@BrookstoneLaw.com
6
   Attorneys for Plaintiffs
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF LOS ANGELES

10

11  ROBERT POTTER, an individual;          Case No.:  BC 459687
12  JOAN POTTER, an individual;
    WILLIE COLLINS, an individual;         COMPLAINT FOR:
13  ALICE COLLINS, an individual;
    TOM HARRY TAVOULARIS, an individual;   1.  FRAUDULENT CONCEALMENT
14  JANINE TAVOULARIS, an individual;          [VIOLATION OF CIV. CODE
15  GERALD SZILLINSKY, an individual;          §§ 1572, 1709 AND 1710];
    TERI O'ROURKE, an individual;
16  STIRLING HALE, an individual;          2.  INTENTIONAL
    MICHELLE HALE, an individual;              MISREPRESENTATION
17  CRISTINA MAGANA, an individual;            [VIOLATION OF CIV. CODE
    KIM COLLIER, an individual;                §§ 1572, 1709 AND 1710];
18  FAUSTO MANCILLA, an individual;
19  ELSA BURGOS-MANCILLA, an individual;   3.  NEGLIGENT
    STEVEN SCOTT NEWTON, an individual;        MISREPRESENTATION
20  MARIA YOLANDA ALVARADO, an                 [VIOLATION OF CIV. CODE
21  individual;                                §§ 1572, 1709 AND 1710];
    VICTOR ALVARADO, an individual;
22  GERARDO RIVERA, an individual;         4.  UNFAIR COMPETITION
    MAYBELLE RIVERA, an individual;            [VIOLATION OF BUS. & PROF.
23  MIGUEL VELAZQUEZ, an individual;           CODE §17200 ET SEQ.];
24  LETICIA VELAZQUEZ, an individual;
    SANDRA VELAZQUEZ, an individual;       5.  WRONGFUL FORECLOSURE
25  TIMOTHY ANUSIEM, an individual;            [VIOLATION OF CIV CODE § 2924];
26  PERTCH TOUKHLADJIAN, an individual;
    MARLENE BACON, an individual;          6.  BREACH OF CONTRACT – TARP
27  CRAIG WHITE, an individual;
    WALTER HARRIS, an individual;              [JURY TRIAL DEMANDED]
28  RANDELEIGH HARRIS, an individual;

                              – 1 –
                           COMPLAINT

Exhibit 1
Page 27

1  MARIA M. SEGURA, an individual;
   MARIA ZEPEDA, an individual;
2  ROBERT HEROD, an individual;
   ANTHONY BLAND, an individual;
3  MARIETTA BLAND, an individual;
4  TERESITA BITANGA, an individual;
   FABIAN BITANGA, an individual;
5  MADELINE BRIGANTE, an individual;
   JEANIE ZUO, an individual;
6  NANCY VIZCARRA, an individual;
7  CHARLES L. WEINER, an individual;
   PRESCILLA WEAVER, an individual;
8  MADONNA GIONTA, an individual;
   DENNIS F. BEAME, an individual;
9  SYDNEY C. BEAME, an individual;
10 NOEL EZEKIEL, an individual;
   MARIA DE LA CRUZ, an individual;
11 JEREMY FOTI, an individual;
   CHANTEL FOTI, an individual;
12 DARLEEN REDDY, an individual;
13 ANGELA MASTROMONICO, an individual;
   JOHNNY TUAN TRAN, an individual;
14 DIANE THI TRUONG, an individual;
   TIFFANY TRUONG TRAN, an individual;
15 QUAN TRAN, an individual;
16 JUDITH MARTINO, an individual;
   MARTIN CHAVEZ, an individual;
17 ANITA CHAVEZ, an individual;
   JOSEPH GORDON, an individual;
18 KEVIN MURRAY, an individual;
19 DAVID BENNETT, an individual;
   IRMA BENNETT, an individual;
20 KRISTIE GREENLEAF, an individual;
21 KRISTIN WITZENBURG, an individual;
   DYVAN SREY, an individual; and
22 MICHAEL MAN, an individual,

23        Plaintiffs,

24   vs.

25
26 JP MORGAN CHASE BANK, N.A., a New
   York corporation, in its own capacity and as
27 an acquirer of certain assets and liabilities of
   Washington Mutual Bank; CHASE HOME
28 FINANCE, LLC, a limited liability company;

- 2 -
COMPLAINT

Exhibit 1
Page 28

LONG BEACH MORTGAGE COMPANY, a
California corporation; EMC MORTGAGE
CORPORATION, a Delaware corporation;
THE BEAR STEARNS COMPANIES, LLC,
a Delaware corporation; CALIFORNIA
RECONVEYANCE COMPANY, a California
corporation; PRIORITY POSTING &
PUBLICATION, a California corporation;
LPS DEFAULT TITLE & CLOSING, a
Delaware corporation; and DOES 1 through
1000, inclusive,

        Defendants.

Plaintiffs, and each of them, hereby demand a jury trial and allege as follows:

### INTRODUCTION

1.     This lawsuit arises from, among other things, Defendants doing the following to Plaintiffs and other homeowners:

     a.     Deceiving Plaintiffs to induce them to enter into loans and mortgages[1] from approximately 2003 through 2008 and which were originated or acquired by Defendants and are purportedly serviced by Defendants;

     b.     Fraudulently and in violation of the California Commercial Code using Mortgage Electronic Registration Systems Inc., a/k/a MERSCORP, Inc. ("MERS") to hide the true ownership of these mortgages and avoid recording taxes in connection therewith;

     c.     Failing to perform their obligations in connection with their acceptance of TARP funds;

     d.     Breaching Plaintiffs' statutorily protected rights, including, consumer and homeowner protection statutes by, among other things, processing money

---

[1] This Complaint uses "mortgage" and "deed of trust" interchangeably. Depending upon the state and other factors, a loan may be secured by either form of security instrument, the deed of trust being the customary instrument in California.

Exhibit 1
Page 29

from unknown offshore sources, in contravention of the Patriot Act and failing to disclose the foregoing in violation of the Truth in Lending Act;[2]

e. Accepting money and purportedly transferring and foreclosing on purported assets that do not exist, and/or as to which Defendants have no right, title, interest or authority to act;

f. Unjustly enriching themselves to the detriment of borrowers, including Plaintiffs herein, by accepting money and offering trial modifications only to pocket modification payments and never apply these payments to mortgage balance;

g. Foreclosing without first giving (1) notice that a loan modification had been rejected and (2) an opportunity to cure the default; and

h. Continuing tortuous conduct intended to deprive Plaintiffs of their rights and remedies for the foregoing acts.

2. Defendants, among other things, violated numerous California laws, breached various contracts, and repeatedly and intentionally failed to honor their agreements with the Plaintiffs as borrowers, or to fulfill their promises, negligently or intentionally, to Plaintiffs.

3. Defendant Washington Mutual Bank, FSB ("WaMu") was among the leading providers and servicers of mortgages in California during all times relevant to this Complaint and is or was the master servicer for the loans and mortgages complained of in this Complaint. By 2008, WAMU was the sixth largest Bank in the United States. In 2003, WAMU originated over $30 billion dollars in Option ARM's; by 2004 that amount had more than doubled to $67 billion; and that volume continued to increase until the demise of WaMu in 2008, described below.

4. Defendant EMC Mortgage Corporation ("EMC") was among the leading providers of mortgages in California during all times relevant to this Complaint and is or was the master servicer for some of the loans and mortgages complained of in this Complaint. Between the years of 2001 through 2008, EMC Mortgage began its expansion of acquiring "Alt-A" loans

---

[2]   Except as a predicate violation for California's Unfair Competition statute, this Complaint does not allege a violation of federal law and there are no causes of action herein pertaining to federal law.

- 4 -

COMPLAINT

Exhibit 1
Page 30

1  and prime and subprime mortgage through its conduit channels developed by its parent company,

2  The Bear Stearns Companies, LLC ("Bear Stearns").

3       5.     Defendant Long Beach Mortgage Company ("LBMC") was among the leading

4  providers of subprime mortgage loans in the United States. In 1999, WaMu bought LBMC,

5  which was exclusively a subprime lender. In 2003, LBMC made and securitized about $4.5

6  billion in home loans. By 2006, its loan operations had increased six fold, and the LBMC

7  conveyor belt sent almost $30 billion in subprime loans into the secondary markets.

8       6.     Defendant Bear Stearns was among the largest investment banks in the world. It

9  was a stalwart of Wall Street since 1923. Bear Stearns was involved in securitization and issued

10  huge amounts of asset-backed securities, which in the case of mortgages, were pioneered by

11  Lewis S. Ranieri, "the father of mortgage securities." In March of 2008, it was acquired by

12  Defendant JP Morgan.

13       7.     In or about 2008, JP Morgan Chase Bank, N.A. ("JP Morgan") acquired all of

14  WaMu, Bear Stearns, and EMC. By late 2009, JP Morgan completed merging the operations of

15  Bear Stearns, WaMu, and EMC. From and after its acquisition of WaMu, Bear Sterns, and

16  EMC, both as a successor in interest and as a principal, JP Morgan engaged in and continued the

17  wrongful conduct complained of herein.

18       8.     The fraud perpetrated by JP Morgan, WaMu, Bear Stearns, and EMC (collectively

19  "the Defendants") from 2001 through 2008 was willful and pervasive. It began with simple

20  greed and then accelerated when executives at Bear Stearns, EMC and WaMu discovered that

21  their firms could not sustain their business, unless they used their size and large market share in

22  California to systematically create fraudulent loans affectionately and aptly labeled, by Bearn

23  Sterns' own officers in a 2006 email, as a **"SACK OF SHIT."**

24       9.     Defendants set out on an expansion spree in 2003 lead by then WaMu CEO Kerry

25  Killinger ("Killinger"). In 2003, WaMu had $188 billion in deposits and 43,000 employees, and

26  its goal was to become the "Wal-Mart" of banking, catering to middle and lower income

27  Americans, and "helping" the less well-off buy homes. Before 2005, WaMu held itself out to the

28  public, including to Plaintiffs, as a well-run, prudent bank that was a pillar of its community, but

Exhibit 1
Page 31

1  starting in about 2005, WaMu formalized a strategy that it had begun to implement as part of a

2  movement from low risk to high risk home loans.  That move to high-risk-lending was motivated

3  by three little words: "Gain on Sale."

4      10.   Gain on sale is a measure of the profit when a loan is sold on the secondary

5  markets.  On April 18, 2006, the President of WaMu's Home loan division gave a presentation to

6  its Board of Directors entitled, "Shift to Higher Margin Products."  The shift they were referring

7  to was the shift away from less profitable government loans, to the most profitable Option ARM,

8  home equity and subprime loans.  Subprime loans, typically priced with an interest rate at least

9  150 basis points (1.5%) above a bank's borrowing cost are eight times more profitable for a bank

10  than a conventional loan.

11      11.   Bear Stearns' Senior Managing Director and Global Head of Mortgages, Tom

12  Marano ("Marano"), acting within the course and scope of his employment, set off on a similar

13  path in 2003 to make EMC and Bear Stearns the lead loan aggregators in the industry by

14  originating and securitizing loans and cutting out the middle men.  In Marano's quest to seek

15  superiority over his competitors, he threw caution into the wind and set out to dominate the

16  industry by any means necessary regardless of the homeowners that he hurt.

17      12.   Rapidly, these intertwined schemes grew into a brazen plan to disregard

18  underwriting standards, fraudulently inflate property values, and induce Plaintiffs into risky

19  mortgage products – county-by-county, city-by-city, person-by-person – in order to take business

20  from legitimate mortgage providers, and moved on to massive securities fraud hand-in-hand with

21  concealment from, and deception of, Plaintiffs and other mortgagees on an unprecedented scale.

22      13.   From as early as 2003, WaMu's senior management led by Killinger and Marano,

23  knew the scheme would cause a liquidity crisis that would devastate Plaintiffs' home values and

24  net worths.  But they did not care.

25      14.   At the very least, at the time of entering into the notes and deeds of trust

26  referenced herein with respect to each Plaintiff, the Defendants were bound and obligated to

27  fully and accurately disclose to each borrower, including each Plaintiff herein, that the loan and

28  mortgage being offered to the Plaintiff was, in fact, part of a massive fraud that the Defendants

- 6 -

COMPLAINT

Exhibit 1
Page 32

1   knew would result in the loss of the equity invested by each Plaintiff in his or her home, the

2   severe impairment of each Plaintiff's credit rating, and the other damages described in this

3   Complaint.

4   15.   It is now all too clear that this was the ultimate high-stakes fraudulent investment

5   scheme of the last decade. Couched in banking and securities jargon, the deceptive gamble with

6   consumers' primary assets – their homes – was nothing more than a financial fraud perpetrated

7   by Defendants and others on a scale never before seen.

8   16.   Defendants, and each of them, wrongfully acted and continue to act as if they are

9   either the owner, beneficiary, successor, assignee or servicer, or have some other right, title, or

10   interest in Plaintiffs' notes and deeds of trust, when, in reality, they have no basis to assert any

11   such right, title or interest.

12   17.   This action seeks remedies for the foregoing improper activities, including a

13   massive fraud perpetrated upon Plaintiffs and other borrowers by the Defendants' business that

14   devastated the values of their residences, in most cases resulting in Plaintiffs' loss of all or

15   substantially all of their net worth.

16   18.   The Defendants' business premise was to leave the borrowers, including

17   Plaintiffs, holding the bag as the Defendants used the Plaintiffs and other borrowers as pawns in

18   massive securities games and fodder to feed its fraud on investors perpetrated on a global scale.

19   This massive fraudulent scheme was a disaster both foreseen by the Defendants and waiting to

20   happen. Defendants knew it, and yet Defendants still induced the Plaintiffs into their scheme

21   without telling them. In fact, had the Plaintiffs been aware of the true facts which the

22   Defendants concealed and failed to disclose, they would not have entered into these transactions.

23   19.   This scheme led directly to a mortgage meltdown in California that was

24   substantially worse than any economic problems facing the rest of the United States.

25   20.   From 2008 to the present, Californians' home values decreased by considerably

26   more than most other areas in the United States as a direct and proximate result of the

27   Defendants' scheme set forth herein. Defendants' systematically destroyed California home

28   values.

- 7 -

**COMPLAINT**

Exhibit 1
Page 33

21.     As a result of Defendants' improper scheme, Plaintiffs lost their equity in their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs incurred material other costs and expenses, described herein. At the same time, Defendants took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of dollars of profits by selling their loans at inflated values and using the loans as collateral for fraudulent swaps.

22.     When Bear Stearns pooled the loans it had originated and sold them in secondary mortgage market transactions, Bear Stearns recorded gains on the sales. In 2005, Bear Stearns reported $7.4 billion net revenue; in 2006, it recognized $9.2 billion in net revenue. But, after the liquidity crisis hit, in 2007, it recognized $5.9 billion in net revenue.

23.     JP Morgan is the largest bank in the United States measured by assets. In 2007, JP Morgan reported $71.3 billion; in 2008 it reported $67.2 billion; in 2009, JP Morgan reported revenues in excess of $100 billion; and in 2010, JP Morgan reported revenues of $104.8 billion with a net profit of $17.4 billion, a 48% increase from the year prior.

24.     WaMu was the 6th largest bank in the U.S. It reported revenues of $18 billion for 2003; $15.7 billion for 2004; $21 billion for 2005; $26.2 billion for 2006; and $25.5 billion for 2007. But in 2007, it reported a net loss of ($67 million).

25.     All of the Defendants managed risk through leverage and derivatives trading. With the advent of "Credit Default Swaps" ("CDS"), they had the protection they needed to push these loans like a drug which required even higher doses. Credit Default Swaps were born at JP Morgan in 1997 when a then-graduate student from Cambridge, Blythe Masters, invented them.

26.     This technique gave these Defendants the insurance they needed to pass the risk along to a third party without taking the risk themselves. Since they planned on securitizing all of their loans and not keeping any of them, the Defendants could – and did – care less about quality or who they hurt. They would push insurance on the investors and actually over insure the loan pools, at times betting that the Plaintiffs and other borrowers would default.

27.     Since the Defendants created these pools to begin with, they were fully aware of the lack of quality and lack of due diligence that went into setting up these pools. These "swaps"

- 8 -
**COMPLAINT**

Exhibit 1
Page 34

1    are a life insurance policy that is placed on Plaintiffs' loans. If the loan dies, the Defendants get

2    paid. These swaps have been considered to be so dangerous that the majority of the financial

3    world has simply stayed away. They are best described by the following prominent experts:

    a.   Nobel prize-winning economist George Akerlof predicted that CDS would

        cause the next meltdown;

    b.   Warren Buffett called them "weapons of mass destruction";

    c.   Warren Buffett's colleague, Charles T. Munger, has called the CDS

        prohibition the best solution, and said "it isn't as though the economic

        world didn't function quite well without it, and it isn't as though what has

        happened has been so wonderfully desirable that we should logically want

        more of it;"

    d.   Former Federal Reserve Chairman Alan Greenspansays CDS are

        dangerous;

    e.   Newsweek called CDS "The Monster that Ate Wall Street"

    f.   President Obama said in a June 17 speech on his plans for finance industry

        regulatory reform that credit swaps and other derivatives "have threatened

        the entire financial system;" and

    g.   George Soros says the market is still unsafe, and that credit- default swaps

        are "toxic" and "a very dangerous derivative" because it's easier and

        potentially more profitable for investors to bet against companies by

        purchasing swaps rather than shorting their publicly traded stocks.

    28.   Defendants knew that the loans that were being written were dangerous and

would default. With the average life of a Pay Option ARM loan being approximately 3 years,

they knew these loans would default before they wrote them. In order to make these loans more

attractive to investors, they would "handcuff" Plaintiffs into these dangerous products by force,

placing substantial early payment penalties if the borrowers tried to get out of these toxic loans.

    29.   Even if the Plaintiffs believed that the real estate market would crash, they had no

way out since they would be heavily penalized for trying to exit these loans.

- 9 -

COMPLAINT

Exhibit 1
Page 35

1    30.    Bear Stearns' knowledge of WaMu and EMC loans made them fully aware of
2    how dangerous these loans really were.  In 2004, a former mortgage analyst, Matt Van Leeuwen,
3    ("Van Leeuwen") at Dallas –based EMC, which was wholly owned by Bear Stearns, had first-
4    hand experience with Bear Stearns' mortgage-backed securitization factory.  EMC was the "third
5    party" firm Bear Stearns' was using to vet the quality of the loans that they would purchase from
6    banks like JP Morgan, WaMu, and Wells Fargo.
7    31.    Van Leeuwen says Bear Stearns' traders pushed EMC analysts to get loan
8    analysis done in only one to three days.  That way, Bear Stearns could sell them off fast to eager
9    investors and didn't have to carry the cost of holding these loans on their books.  According to
10   two additional analysts, they were encouraged to just make up data—that is, completely fabricate
11   -- like "FICO" scores if the lenders they purchased the loans from did not get back to the analysts
12   promptly enough.Bear Stearns securitization machine was busy making money since all of its top
13   level managers were paid bonuses based on loan volume and not loan quality.
14   32.    According to two EMC analysts, "Spending time to go back to the lender and
15   demand clarification, like if verification of income actually backed these loans, the executives at
16   Bear would just make the loan type fit."  One EMC analyst explained, "from Bear's perspective,
17   we didn't want to overpay for the loans, but we don't want to waste the resources on deep
18   investigation: that's not how the company makes money.  That's our competitive advantage – it
19   eats into profits."
20   33.    To add further insult to injury, Defendants, knowing of this massive fraud, sought
21   to swoop in like the Civil War carpetbaggers and profiteer from the carnage that had been
22   wreaked on Plaintiffs.
23   34.    With the proceeds of TARP funds and a voraciousness that has already been
24   chastised by numerous courts, Defendants then sought to obliterate the last vestiges of value held
25   by Plaintiffs, and proceeded to flip distressed assets for a profit.
26   35.    Defendants' other improper acts since 2008 are numerous, including but not
27   limited to: (1) issuing Notices of Default to some Plaintiffs in violation of Cal. Civil Code
28   §2923.5; (2) misrepresenting their intention to arrange loan modifications for many Plaintiffs,

- 10 -
COMPLAINT

Exhibit 1
Page 36

1   while in fact creating abusive roadblocks to deprive Plaintiffs of their rights; and (3) failing to

2   respond to most Plaintiffs' communications while often erecting barriers to make it difficult for

3   the Plaintiffs to communicate with them.

4         36.    Defendants continue to demand payment and to threaten to foreclose on Plaintiffs,

5   despite the facts that: (1) Defendants have no proof that they own the notes and deeds of trust

6   they seek to enforce; (2) there is considerable evidence that Defendants do not own the notes and

7   deeds of trust they enforce and seek to enforce and based thereon, Plaintiffs allege that they do

8   not; and (3) whether or not they can demonstrate ownership of the requisite notes and deeds of

9   trust, Defendants lack the legal right to enforce the foregoing because they have not complied

10  with disclosure requirements intended to assure that mortgages are funded with monies obtained

11  lawfully.

12        37.    As a proximate and foreseeable result of the Defendants' sale of the notes and

13  deeds of trust regarding Plaintiffs' properties and others similarly situated for more than the

14  actual value of such instruments, securitization pools lacked the cash flow necessary to maintain

15  the securitization pools in accordance with their indentures.  Further, it was only a matter of time

16  before Defendants' fraudulent offshore swaps were uncovered.  The unraveling of the

17  Defendants' fraudulent scheme has materially depressed the price of real estate throughout

18  California, including the real estate owned by Plaintiffs.

19        38.    Defendants have admitted in their various securities filings that they sold

20  Plaintiffs' notes and mortgages.  There is no evidence that Defendants have re-acquired

21  Plaintiffs' notes or deeds of trust.  Accordingly, their claims of subsequent ownership appear to

22  be specious.

23        39.    Plaintiffs believe and thereon allege that Defendants have made demand for

24  payment on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants were

25  incapable of establishing (and did not have any credible knowledge regarding) who owns the

26  promissory notes Defendants were purportedly servicing, and that these acts are continuing.

27  Because Defendants are not, and were not at the relevant times, the holders of Plaintiffs' notes

28  and deeds of trust and are not, and were not at the relevant times, operating under a valid power

- 11 -
COMPLAINT

Exhibit 1
Page 37

1   from the current holders of the notes and deeds of trust, Defendants are not and were not at the

2   relevant times allowed legally to enforce the notes or deeds of trust. Defendants' attempts to

3   enforce these notes were nothing but a sham and a fraud upon the Plaintiffs, the public, and the

4   courts.

5       40.   MERS operates an electronic registry designed to track servicing rights and the

6   ownership of mortgages. MERS is sometimes named as the "nominee" for lenders, and at other

7   times MERS is named as the "beneficiary" of the deed of trust on behalf of unknown persons.

8   When a loan is transferred among MERS members, MERS purports to simplify the process by

9   avoiding the requirement to re-record liens and pay county recorder filing fees.

10      41.   For many of the Plaintiffs herein, MERS claims to be the owner of the security

11  interest indicated by the mortgages transferred by lenders, investors and their loan servicers in

12  the county land records. MERS claims its process eliminates the need to file assignments in the

13  county land records which lowers costs for lenders and consumers by reducing county recording

14  revenues from real estate transfers and provides a central source of information and tracking for

15  mortgage loans.

16      42.   Based upon published reports, including MERS' website, Plaintiffs believe and

17  hereon allege, MERS does not: (1) take applications for, underwrite or negotiate mortgage loans;

18  (2) make or originate mortgage loans to consumers; (3) extend credit to consumers; (4) service

19  mortgage loans; or (5) invest in mortgage loans.

20      43.   MERS is used by Defendants to facilitate the unlawful transfers of mortgages,

21  unlawful pooling of mortgages and the injection into the United States banking industry of

22  unsourced (i.e., unknown) funds, including, without limitation, improper off-shore funds.

23  Plaintiffs are informed and thereon believe and allege that MERS has been listed as beneficial

24  owner of more than half the mortgages in the United States. MERS is improperly listed as

25  beneficial owner of many of Plaintiffs' mortgages.

26      44.   On April 13, 2011, the Federal Reserve Board of Governors, the Comptroller of

27  the Currency, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision and

28  the Federal Housing Finance Agency found "certain deficiencies and unsafe or unsound practices

- 12 -
COMPLAINT

Exhibit 1
Page 38

1  by MERS and MERSCORP that present financial, operational, compliance, legal and

2  reputational risks." As a result, the various agencies entered into a Consent Order requiring

3  those practices be audited and corrected.

4       45.    In 2001, Congress found that "money laundering, and the defects in financial

5  transparency on which money launderers rely, are critical to the financing of global terrorism and

6  the provision of funds for terrorist attacks." Congress specifically found that "money launderers

7  subvert legitimate financial mechanisms and banking relationships by using them as protective

8  covering for the movement of criminal proceeds and the financing of crime and terrorism..."

9  The Defendants in this lawsuit have in this manner subverted financial mechanisms with the

10  intent, or at least the result and callous disregard, of providing such a covering for many illegal

11  activities.

12       46.    Plaintiffs Joan and Robert Potter applied for a loan to refinance an already

13  expensive mortgage loan in 2006. Defendants steered them into a Negatively Amortized

14  mortgage loan with a teaser rate of 1% even though Plaintiffs were 71 years of age. Defendants

15  hid the true rate of interest on the loan and failed to disclose that the true rate was 8.0633%. This

16  interest rate is based on an MTA index of 4.5633% at the time the loan was originated, plus a

17  margin of 3.5% which means the true rate was 8.0633% and not the 1% they were disclosed.

18  The difference between these two rates means a variance of payment in excess of $3,152.71 per

19  month that was accruing deferred interest. Payment disclosed on the note was $2,894.76;

20  however the true interest only payment was $6,047.48 per month. This huge variance would

21  cause the homeowner to bury themselves in a financial abyss from which they could never

22  recover.

23       47.    The Potters requested assistance from JP Morgan only to be turned away.

24  Defendants know this loan contains fraud. This loan was pushed upon Plaintiffs even though

25  Plaintiffs did not have a job at the time. Robert Potter was removed from the loan and Joan

26  Potter was made the primary borrower in order to manipulate the underwriting of this loan. Mrs.

27  Potter had a substantially higher "FICO" score and, as described earlier in this complaint, that

28  score was used for qualification purposes. EMC and its affiliates knew Mrs. Potter did not have

- 13 -

COMPLAINT

Exhibit 1
Page 39

1  a job or the capacity to pay back this loan.  EMC and its affiliates charged the homeowners

2  $32,399 in fees and forced Mr. Potter off the loan.

3       48.   On March 31, 2010, Defendants gave Plaintiffs Willie and Alice Collins a trial

4  loan modification.  Based on the agreement, they were to make three (3) trial modification

5  payments before they were offered a permanent modification.  After seven (7) successful

6  payments their eighth (8th) payment was rejected; the reason? "Chase does not accept personal

7  checks for foreclosure."  The Defendants had absolutely no issue with cashing Mr. Collins'

8  previous seven (7) payments.  The Collins were notified by mail on January 5, 2011, and they

9  immediately tried to rectify the problem by sending in certified funds only to be rejected once

10  again.  On February 25, 2011, California Reconveyance Company attempted to sell Plaintiffs

11  home with no prior notice, even though they were being told by Defendants that they were in

12  active review for modification.

13       49.   On April 7, 2006 WaMu wrote a mortgage loan for Plaintiffs Tom Harry

14  Tavoularis and his wife Janine.  At the time of application Mr. Tavoularis was 80 years old.

15  WaMu steered their clients into an interest only adjustable rate loan with a balance of

16  $1,250,000.00.  The payments on this new loan were $5,963.54 interest only.  The fact that Mr.

17  and Mrs. Tavoularis were given a loan is not in question; however the type of loan that was

18  structured for them is.  They are 85 years of age and have begged Defendants to assist them since

19  they have been on a fixed income of Social Security for many years and their requests have

20  fallen upon deaf ears.  On April 1, 2011 as if a cruel April fool's joke, Defendants attempted to

21  sell Plaintiffs home.  If it were not for the tireless efforts of their counsel, Defendants would have

22  succeeded.

23       50.   Defendants have preyed upon the elderly, the sick, the disenfranchised, and have

24  absolutely no interest in keeping anyone in their homes.  As is the case with Plaintiffs Teri

25  O'Rourke and Gerald Szillinsky.  Mrs. O'Rourke and Mr. Szillinsky have both been battling

26  cancer for over a year.  They have repeatedly begged Defendants for help in their time of need.

27  All of their cries for help have fallen on deaf ears since Defendants hold a government guarantee

28  in their back pocket on this mortgage loan.  Mrs. O'Rourke was diagnosed with Stage II Breast

- 14 -

COMPLAINT

Exhibit 1
Page 40

1  Cancer and Mr. Szillinsky was diagnosed with Stage II Squamous Cell Carcinoma of the Larynx.

2  During arduous trials of heavy Chemotherapy and Radiation treatments they have tried to stay

3  current.

4       51.    Defendants have made it impossible for the Plaintiffs to stay current since they

5  have breached the original contract that they signed. Their loan gave them the ability to make

6  Negatively Amortized payments as one of their payment options, however as soon as JP Morgan

7  took over WaMu that option was taken away from all Plaintiffs. Defendant failed to notify any of

8  the Plaintiffs in this complaint and they have single handedly forced all of these Plaintiffs into

9  foreclosure.

10       52.    Defendants' wrongful acts continue to this day with hardball tactics and deception

11  that continue to threaten Plaintiffs' rights and financial security, as well as the economic future

12  of the State of California. Since 2010, these tactics and Defendants' other wrongful acts have

13  finally been revealed as a result of extensive litigation and Government investigations.

14

15  **PARTIES**

16  *Plaintiffs*

17       53.    Plaintiff ROBERT POTTER is an individual residing in the State of California,

18  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

19  and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

20  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

21  loan.

22       54.    Plaintiff JOAN POTTER is an individual residing in the State of California, who

23  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

24  June 30, 2008, secured by a deed of trust on her California real estate. At all times material

25  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

26  loan.

27       55.    Plaintiff WILLIE COLLINS is an individual residing in the State of California,

28  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

- 15 -
COMPLAINT

Exhibit 1
Page 41

1  and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

2  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

3  loan.

4       56.    Plaintiff ALICE COLLINS is an individual residing in the State of California,

5  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

6  and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

7  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

8  loan.

9       57.    Plaintiff TOM HARRY TAVOULARIS is an individual residing in the State of

10  California, who borrowed money from Defendants or its subsidiaries or affiliates between

11  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate. At all

12  times material hereto, Defendants have acted as Servicer or in some other control capacity over

13  processing the loan.

14       58.    Plaintiff JANINE TAVOULARIS is an individual residing in the State of

15  California, who borrowed money from Defendants or its subsidiaries or affiliates between

16  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all

17  times material hereto, Defendants have acted as Servicer or in some other control capacity over

18  processing the loan.

19       59.    Plaintiff GERALD SZILLINSKY is an individual residing in the State of

20  California, who borrowed money from Defendants or its subsidiaries or affiliates between

21  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate. At all

22  times material hereto, Defendants have acted as Servicer or in some other control capacity over

23  processing the loan.

24       60.    Plaintiff TERI O'ROURKE is an individual residing in the State of California,

25  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

26  and June 30, 2008, secured by a deed of trust on her California real estate. At all times material

27  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

28  loan.

- 16 -

**COMPLAINT**

Exhibit 1
Page 42

1     61.    Plaintiff STIRLING HALE is an individual residing in the State of California,

2  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

3  and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

4  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

5  loan.

6     62.    Plaintiff MICHELLE HALE is an individual residing in the State of California,

7  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

8  and June 30, 2008, secured by a deed of trust on her California real estate. At all times material

9  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

10  loan.

11     63.    Plaintiff CRISTINA MAGANA is an individual residing in the State of

12  California, who borrowed money from Defendants or its subsidiaries or affiliates between

13  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all

14  times material hereto, Defendants have acted as Servicer or in some other control capacity over

15  processing the loan.

16     64.    Plaintiff KIM COLLIER is an individual residing in the State of California, who

17  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

18  June 30, 2008, secured by a deed of trust on her California real estate. At all times material

19  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

20  loan.

21     65.    Plaintiff FAUSTO MANCILLA is an individual residing in the State of

22  California, who borrowed money from Defendants or its subsidiaries or affiliates between

23  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate. At all

24  times material hereto, Defendants have acted as Servicer or in some other control capacity over

25  processing the loan.

26     66.    Plaintiff ELSA BURGOS-MANCILLA is an individual residing in the State of

27  California, who borrowed money from Defendants or its subsidiaries or affiliates between

28  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all

- 17 -

COMPLAINT

Exhibit 1
Page 43

1   times material hereto, Defendants have acted as Servicer or in some other control capacity over

2   processing the loan.

3        67.   Plaintiff STEVEN SCOTT NEWTON is an individual residing in the State of

4   California, who borrowed money from Defendants or its subsidiaries or affiliates between

5   January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate. At all

6   times material hereto, Defendants have acted as Servicer or in some other control capacity over

7   processing the loan.

8        68.   Plaintiff MARIA YOLANDA ALVARADO is an individual residing in the State

9   of California, who borrowed money from Defendants or its subsidiaries or affiliates between

10  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all

11  times material hereto, Defendants have acted as Servicer or in some other control capacity over

12  processing the loan.

13       69.   Plaintiff VICTOR ALVARADO is an individual residing in the State of

14  California, who borrowed money from Defendants or its subsidiaries or affiliates between

15  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate. At all

16  times material hereto, Defendants have acted as Servicer or in some other control capacity over

17  processing the loan.

18       70.   Plaintiff GERARDO RIVERA is an individual residing in the State of California,

19  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

20  and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

21  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

22  loan.

23       71.   Plaintiff MAYBELLE RIVERA is an individual residing in the State of

24  California, who borrowed money from Defendants or its subsidiaries or affiliates between

25  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all

26  times material hereto, Defendants have acted as Servicer or in some other control capacity over

27  processing the loan.

28

- 18 -

COMPLAINT

Exhibit 1
Page 44

1    72.   Plaintiff MIGUEL VELAZQUEZ is an individual residing in the State of

2  California, who borrowed money from Defendants or its subsidiaries or affiliates between

3  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate.  At all

4  times material hereto, Defendants have acted as Servicer or in some other control capacity over

5  processing the loan.

6    73.   Plaintiff LETICIA VELAZQUEZ is an individual residing in the State of

7  California, who borrowed money from Defendants or its subsidiaries or affiliates between

8  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all

9  times material hereto, Defendants have acted as Servicer or in some other control capacity over

10  processing the loan.

11    74.   Plaintiff SANDRA VELAZQUEZ is an individual residing in the State of

12  California, who borrowed money from Defendants or its subsidiaries or affiliates between

13  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all

14  times material hereto, Defendants have acted as Servicer or in some other control capacity over

15  processing the loan.

16    75.   Plaintiff TIMOTHY ANUSIEM is an individual residing in the State of

17  California, who borrowed money from Defendants or its subsidiaries or affiliates between

18  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate.  At all

19  times material hereto, Defendants have acted as Servicer or in some other control capacity over

20  processing the loan.

21    76.   Plaintiff PERTCH TOUKHLADJIAN is an individual residing in the State of

22  California, who borrowed money from Defendants or its subsidiaries or affiliates between

23  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate.  At all

24  times material hereto, Defendants have acted as Servicer or in some other control capacity over

25  processing the loan.

26    77.   Plaintiff MARLENE BACON is an individual residing in the State of California,

27  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

28  and June 30, 2008, secured by a deed of trust on her California real estate.  At all times material

- 19 -

COMPLAINT

Exhibit 1
Page 45

1  hereto, Defendants have acted as Servicer or in some other control capacity over processing the
2  loan.

3       78.   Plaintiff CRAIG WHITE is an individual residing in the State of California, who
4  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
5  June 30, 2008, secured by a deed of trust on his California real estate. At all times material
6  hereto, Defendants have acted as Servicer or in some other control capacity over processing the
7  loan.

8       79.   Plaintiff WALTER HARRIS is an individual residing in the State of California,
9  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003
10  and June 30, 2008, secured by a deed of trust on his California real estate. At all times material
11  hereto, Defendants have acted as Servicer or in some other control capacity over processing the
12  loan.

13       80.   Plaintiff RANDELEIGH HARRIS is an individual residing in the State of
14  California, who borrowed money from Defendants or its subsidiaries or affiliates between
15  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all
16  times material hereto, Defendants have acted as Servicer or in some other control capacity over
17  processing the loan.

18       81.   Plaintiff MARIA M. SEGURA is an individual residing in the State of California,
19  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003
20  and June 30, 2008, secured by a deed of trust on her California real estate. At all times material
21  hereto, Defendants have acted as Servicer or in some other control capacity over processing the
22  loan.

23       82.   Plaintiff MARIA ZEPEDA is an individual residing in the State of California,
24  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003
25  and June 30, 2008, secured by a deed of trust on her California real estate. At all times material
26  hereto, Defendants have acted as Servicer or in some other control capacity over processing the
27  loan.

28

- 20 -
COMPLAINT

Exhibit 1
Page 46

1    83.    Plaintiff ROBERT HEROD is an individual residing in the State of California,

2    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

3    and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

4    hereto, Defendants have acted as Servicer or in some other control capacity over processing the

5    loan.

6    84.    Plaintiff ANTHONY BLAND is an individual residing in the State of California,

7    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

8    and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

9    hereto, Defendants have acted as Servicer or in some other control capacity over processing the

10   loan.

11   85.    Plaintiff MARIETTA BLAND is an individual residing in the State of California,

12   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

13   and June 30, 2008, secured by a deed of trust on her California real estate. At all times material

14   hereto, Defendants have acted as Servicer or in some other control capacity over processing the

15   loan.

16   86.    Plaintiff TERESITA BITANGA is an individual residing in the State of

17   California, who borrowed money from Defendants or its subsidiaries or affiliates between

18   January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all

19   times material hereto, Defendants have acted as Servicer or in some other control capacity over

20   processing the loan.

21   87.    Plaintiff FABIAN BITANGA is an individual residing in the State of California,

22   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

23   and June 30, 2008, secured by a deed of trust on his California real estate. At all times material

24   hereto, Defendants have acted as Servicer or in some other control capacity over processing the

25   loan.

26   88.    Plaintiff MADELINE BRIGANTE is an individual residing in the State of

27   California, who borrowed money from Defendants or its subsidiaries or affiliates between

28   January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate. At all

- 21 -

COMPLAINT

Exhibit 1
Page 47

1   times material hereto, Defendants have acted as Servicer or in some other control capacity over
2   processing the loan.
3       89.   Plaintiff JEANIE ZUO is an individual residing in the State of California, who
4   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
5   June 30, 2008, secured by a deed of trust on her California real estate.  At all times material
6   hereto, Defendants have acted as Servicer or in some other control capacity over processing the
7   loan.
8       90.   Plaintiff NANCY VIZCARRA is an individual residing in the State of California,
9   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003
10  and June 30, 2008, secured by a deed of trust on her California real estate.  At all times material
11  hereto, Defendants have acted as Servicer or in some other control capacity over processing the
12  loan.
13      91.   Plaintiff CHARLES L. WEINER is an individual residing in the State of
14  California, who borrowed money from Defendants or its subsidiaries or affiliates between
15  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate.  At all
16  times material hereto, Defendants have acted as Servicer or in some other control capacity over
17  processing the loan.
18      92.   Plaintiff PRESCILLA WEAVER is an individual residing in the State of
19  California, who borrowed money from Defendants or its subsidiaries or affiliates between
20  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all
21  times material hereto, Defendants have acted as Servicer or in some other control capacity over
22  processing the loan.
23      93.   Plaintiff MADONNA GIONTA is an individual residing in the State of
24  California, who borrowed money from Defendants or its subsidiaries or affiliates between
25  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all
26  times material hereto, Defendants have acted as Servicer or in some other control capacity over
27  processing the loan.
28

- 22 -
COMPLAINT

Exhibit 1
Page 48

1    94.    Plaintiff DENNIS F. BEAME is an individual residing in the State of California,

2  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

3  and June 30, 2008, secured by a deed of trust on his California real estate.  At all times material

4  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

5  loan.

6    95.    Plaintiff SYDNEY C. BEAME is an individual residing in the State of California,

7  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

8  and June 30, 2008, secured by a deed of trust on her California real estate.  At all times material

9  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

10  loan.

11    96.    Plaintiff NOEL EZEKIEL is an individual residing in the State of California, who

12  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

13  June 30, 2008, secured by a deed of trust on her California real estate.  At all times material

14  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

15  loan.

16    97.    Plaintiff MARIA DE LA CRUZ is an individual residing in the State of

17  California, who borrowed money from Defendants or its subsidiaries or affiliates between

18  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all

19  times material hereto, Defendants have acted as Servicer or in some other control capacity over

20  processing the loan.

21    98.    Plaintiff JEREMY FOTI is an individual residing in the State of California, who

22  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

23  June 30, 2008, secured by a deed of trust on his California real estate.  At all times material

24  hereto, Defendants have acted as Servicer or in some other control capacity over processing the

25  loan.

26    99.    Plaintiff CHANTEL FOTI is an individual residing in the State of California, who

27  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

28  June 30, 2008, secured by a deed of trust on her California real estate.  At all times material

- 23 -

COMPLAINT

Exhibit 1
Page 49

1   hereto, Defendants have acted as Servicer or in some other control capacity over processing the

2   loan.

3       100.    Plaintiff DARLEEN REDDY is an individual residing in the State of California,

4   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

5   and June 30, 2008, secured by a deed of trust on her California real estate.  At all times material

6   hereto, Defendants have acted as Servicer or in some other control capacity over processing the

7   loan.

8       101.    Plaintiff ANGELA MASTROMONICO is an individual residing in the State of

9   California, who borrowed money from Defendants or its subsidiaries or affiliates between

10  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all

11  times material hereto, Defendants have acted as Servicer or in some other control capacity over

12  processing the loan.

13      102.    Plaintiff JOHNNY TUAN TRAN is an individual residing in the State of

14  California, who borrowed money from Defendants or its subsidiaries or affiliates between

15  January 1, 2003 and June 30, 2008, secured by a deed of trust on his California real estate.  At all

16  times material hereto, Defendants have acted as Servicer or in some other control capacity over

17  processing the loan.

18      103.    Plaintiff DIANE THI TRUONG is an individual residing in the State of

19  California, who borrowed money from Defendants or its subsidiaries or affiliates between

20  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all

21  times material hereto, Defendants have acted as Servicer or in some other control capacity over

22  processing the loan.

23      104.    Plaintiff TIFFANY TRUONG TRAN is an individual residing in the State of

24  California, who borrowed money from Defendants or its subsidiaries or affiliates between

25  January 1, 2003 and June 30, 2008, secured by a deed of trust on her California real estate.  At all

26  times material hereto, Defendants have acted as Servicer or in some other control capacity over

27  processing the loan.

28

- 24 -

**COMPLAINT**

Exhibit 1
Page 50